UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHANEL TAYLOR, ) | |
| ) | |
| Next Friend:   Morline Patton Taylor ) | |
| 8509 Riverview BLVD. ) | |
| St. Louis, MO. 63147 ) | |
| ) | Case No. 4:11-CV-0135 CAS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| CHIEF OF POLICE DANIEL ISOM, ) | |
| et al. ) | |

## PLAINTIFF'S TRIAL BRIEF

### PRELIMINARY STATEMENT

On September 16, 2010, Chanel Taylor (a minor at the time), was severely injured when St. Louis Police Officer Jason Stockley in fact placed Ms. Taylor in a wristlock and applied such excessive pressure as to break her arm.

### STATEMENT OF FACTS

On September 16, 2010, Chanel Taylor a resident of St. Louis City visited a neighborhood store to purchase several items.  Upon entered the store Ms. Taylor noticed an acquaintance of hers from her neighborhood referred to herein as Kwame H.  As Ms. Taylor exited the store, she witnessed Kwame H on the ground under two police officers who were beating him about his head and face area.   Disturbed by what she observed, Ms. Taylor voiced her disapproval of what she perceived to be clearly excessive force and brutality to the police officers.  According, St. Louis Police Officer Jason Stockley, he received a distress call from the officers at the scene arresting Kwame H.   Upon arriving at the scene, Officer Latroy Taylor directed Officer Stockley to arrest Ms. Taylor.  Officer Stockley then grabbed Ms. Taylor's right arm, folded it behind her back; while concurrently pulling her right elbow away from her back and thereby manipulating

1

her right wrist into a "lock" position and twisting her wrist with such force as to break her right arm.

Prior to the occurrences giving rise to this lawsuit, Officer Stockley was discharged from the U.S. Military for "medical" reasons and had been *inter alia* diagnosed as suffering from Post Traumatic Stress Syndrome – a condition that creates a heightened potential for de-stabilized judgment. Defendants responsible for the recruitment, training, hiring and supervising, Officer Stockley, at all relevant times, knew or should have known of the risks associated with Officer Stockley's deployment into the streets of the City of St. Louis; particularly in light of his diagnosis of PTSD.  However, Defendants charged with supervising Officer Stockley failed to have in place appropriate and reasonable safeguards to ensure that Officer Stockley would not be left loose to engage in and/or to employ reckless and/or excessive tactics in the commission of police activities.  Ms. Taylor was injured as a direct result thereof both to her body and to her constitutional and civil liberties. Moreover, the citizens and public have and continue to suffer abridgment of its rights and civil liberties inured to them by and through the State and Federal constitutions.

To date, Ms. Taylor's fractured arm has not properly healed despite having the arm placed in a cast for approximately two months and undergoing physical therapy for approximately an entire year.

As a result of her injuries, Ms. Taylor was forced to withdraw from cosmetology school.  Though she had completed the academic requirements of her curriculum, she was unable to complete the final phase of the practicum that require her to perform physically cosmetology services due directly to the pain she suffers from her right arm having been fractured.  Further, Ms. Taylor continues to suffer limitations in her right arm and in fact is unable to lift her right arm for extended periods of time.  Tragically, Ms. Taylor faces the possibility of having to undergo future medical care; including the possibility of surgery, if she is to continue pursuit of her aspirations of becoming a beautician and hair stylist.

# ARGUMENT
## POINT I

## **THE CONDUCT PLAINTIFF WAS SUBJECTED TO ESTABLISHES A CONSTITUTIONAL VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND PLAINTIFF WILL THEREFORE  ESTABLISH A VIOLATION OF 42 U.S.C. § 1983.**

Under 42 U.S.C. §  1983, a plaintiff "must show that: (1) the defendants acted under 'color of state law'; and (2) their conduct or actions deprived plaintiff of a right, privilege or immunity guaranteed by the Constitution or laws of the United States." *Rivera v. Goord,* 119 F. Supp. 2d 327, 335 (S.D.N.Y. 2000); (*citing, Shabazz v. Vacco,* F. Supp. 2d  1998 WL 901737 *2 (S.D.N.Y. 1998); (*citing, Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994).  The first element is not subject to dispute. Defendants were clearly acting under color of state law, as they were either on duty Police Officers or responsible for overseeing the actions of the Police Officers named.  As to the second element, breaking the plaintiff's arm, if found by the jury, is sufficient to constitute deprivation of life liberty and equal protections under the law.  Defendant's use of force was excessive and resulted in permanent injury to Plaintiff.

All claims that law enforcement officials have used excessive force-deadly or not- in the course of an arrest, investigatory stop, or other "seizure of a free citizen are properly analyzed under the Fourth Amendment's "objective reasonableness standard…. *Graham v. Connor*, 490 U.S. 386 at 392. Moreover, a case holding that allegations of police misconduct in connection with an arrest or seizure are adequately reviewed under the Fourth Amendment's reasonableness standard. Albright v. Oliver, 510 U.S. 266, 114 S.Ct.807 at 832.

Ms. Taylor in the instant action has sued the Defendants in their individual capacity.  In such an action, the Ms. Taylor must establish the defendants' personal involvement in the constitutional violations alleged. . *Gowins v. Greiner* 2002 U.S. Dist. LEXIS 14098 (S.D.N.Y. 2002). Personal involvement can be established by evidence of (1) direct participation in the constitutional violation; (2) failure to remedy a wrong after learning of it; (3) creation or maintenance of a policy under which unconstitutional acts occurred; (4) gross negligence in managing subordinates who committed unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Id.*

3

The Plaintiff will present evidence and testimony showing that the Defendants were personally responsible for Ms. Taylors arm.  The evidence will also show that Officers refused to provide Ms. Taylor prompt medical attention and failed to take any action.  to avert the imminent danger posed to Ms. Taylor.

## POINT II

### PLAINTIFF IS ENTITLED TO RECOVERY OF DAMAGES, INCLUDING COMPENSATORY AND PUNITIVE DAMAGES

In this action, Ms. Taylor seeks various remedies available to her under 42 U.S.C. § 1983 including, *inter alia*, compensatory damages for mental anguish and emotional distress as well as punitive damages.[1]

### A.   Compensatory Damages

Compensatory damages are a form of relief available to a successful plaintiff under 42 U.S.C. § 1983.  Fair and reasonable compensatory damages are appropriate where the plaintiff's injury was caused by the violation of a constitutional right.  *Arroyo Lopez v. Nuttall,* 25 F. Supp. 2d 407, 410 (S.D.N.Y. 1998). Ms. Taylor will ask the jury in this case to award her compensatory damages based upon her physical injuries, mental anguish and emotional distress suffered during her arrest relative to the incidents which form the core of this case.

Moreover, in this type of case, the testimony of a plaintiff alone provides a sufficient basis for a jury to award damages for mental anguish and emotional distress and punitive damages.  *Courtney v. City of New York*, 20 F. Supp. 2d 655, 661 (S.D.N.Y. 1998) (holding that a plaintiff "is not required to corroborate [her] testimony regarding mental anguish in order to support a compensatory damage award." (*citation omitted*)).

---

[1] Plaintiff will also seek an award of costs, including a reasonable attorneys' fee, and respectfully reserves the right to make an application for such an award following the entry of final judgment.  *See* Fed. R. Civ. P. Rule 54(b)(2).

### B.     Punitive Damages

Punitive damages may be awarded in § 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Mathie v. Fries*, 121 F.3d 808, 815 (2d Cir. 1997) (*quoting Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983)). Punitive damages may also be awarded "in a proper case under § 1983 for the purpose of deterring or punishing a violation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 257 n. 11, 98 S. Ct. 1042, 1049 n. 11 (1978); *see also, In re* 1272 (2d Cir.), *cert. denied*, 502 U.S. 920, 112 S. Ct. 331 (1991) (reviewing history of punitive damages).*Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1272 (2d Cir.), cet. Denied, 502 U.S.920, 112 S. Ct. 331 (1991) (reviewing history of punitive damages).

Here, Ms. Taylor's claims indicate that punitive damages are entirely appropriate. If the jury finds that the defendants were responsible for breaking Plaintiff's arm, mere compensatory damages would be insufficient to provide a true disincentive.  See e.g. Grimm v. Lane 895 F. Supp. 907 (S.D. Ohio 1995). (awarding punitive damages against officers who conspired to administer a beating to prisoners who they felt needed an "attitude adjustment").

## POINT III
## PRECLUSION OF EVIDENCE

### A.     Evidence of Prior Convictions

The evidence of Plaintiff's prior juvenile record should be precluded from being offered during trial for impeachment purposes. While Fed.R. Evid 609 generally permits criminal convictions to be offered into evidence for impeachment purposes, this Rule is inapposite when such convictions are of a minor. Plaintiff Ms. Taylor was a minor at the time of the incident. Impeachment by evidence of "bad acts" is permitted under Fed. R. Evid. 608(b), but only "if probative of truthfulness or untruthfulness." In <u>Hafner v. Brown</u> the court affirmed the exclusion of evidence of a witness's past arrests that were not probative of the witness's credibility. 983 F.2d 570, 576 (4th Cir. 1992). Likewise, Ms. Taylor's juvenile arrest record and statements to health care providers have nothing whatsoever to do with her credibility because she has not been accused of concealing involvement or making false statements to the government during their investigation.

### B.     The Prejudice Outweighs the Probative Value

Moreover, with respect to Ms. Taylor's prior juvenile record, the evidence in question should not be admitted because it is prejudicial and no limiting instruction from this Court could cure the prejudice. Fed.REvid. 403 Provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

The term "unfair prejudice" means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one" *Advisory Committee Note to Fed.R.Evid.* 403.

Despite the fact that the strength of this country lies in the diversity of its people, in today's environment of reality television and the sixty-second news cycle, being an African American Female carries a stereotype that cannot be ignored by our judicial system. To permit the jury to hear that Ms. Taylor has a juvenile record or allegedly mentioned incriminating facts to health care providers will unquestionably cause the jury "to base its decision on something other than the established propositions in the case. Prejudice is also unfair if the evidence was designed to elicit a response from the jurors that is not justified by the evidence." *2 Weinstein's Federal Evidence*, §403.04(1)(b), at 403-41 (2d. 2003). While this is a civil proceeding, the fact that Ms. Taylor has a juvenile arrest, even though she successfully completed probation and denies offering the health care provider information contained in medical records, is likely to be viewed by the jury as evidence of guilt.

Courts have routinely found highly charged evidence of the type at issue to be unfairly prejudicial and, therefore, inadmissible. In *Nichols v. American Nat'l Ins. Co.,* the court ruled it was an abuse of discretion to permit testimony in a Title VII sexual harassment case that the plaintiff had an abortion, in contravention of her religious beliefs, because of the increased likelihood that the jury would view her as immoral and not worthy of trust. 154 F. 3d 875, 884-85 (8th Cir. 1998). In *People of Guam v. Shymanovitz*, testimony regarding sexually explicit magazines found in the defendant's

residence were prejudicial in a case involving prosecution for unlawful solicitation of minors because the jury could infer that just because the defendant was a homosexual, he must have engaged in the illicit sexual activity with the minors 157 F.3d 1154, 1160 (9th cir. 1998). Similarly, in *United States v. Fulmer,* the court held that the admission of testimony which mentioned the Oklahoma City bombing of the federal building was unduly prejudicial when offered in a case one week later where the defendant was on trial for threatening a federal officer. 108 F3d 1486, 1498 (1st Cir. 1997). Here, Plaintiff's juvenile record is certainly more prejudicial than probative and should be excluded by this Court.

Respectfully submitted,
FIELDS AND ASSOCIATES LLC.

/s/ Larry S. Fields_____
Larry S. Fields MO. 58044
Fields and Associates LLC.
401 S. 18th Street
Suite 425
St. Louis, MO. 63101
314-241-3535 Telephone
314-241-3536 Facsimile
Email lsf19@msn.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Plaintiffs Trial Brief was served upon Defendants by way of the Clerk of Courts Electronic Filing system and a courtesy copy to the Honorable Charles A. Shaw on this day February 15, 2013.

/s/ Larry S. Fields

7